UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

CESAR HERNÁNDEZ-DE-LA-ROSA,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 14-1132 (JAF)

(Crim. No. 08-37-1)

**OPINION AND ORDER**

Petitioner César Hernández-de-la-Rosa ("Hernández-de-la-Rosa") comes before the court with a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence we imposed in Criminal No. 08-37-1. (Docket No. 1.) We deny his petition.

It has become common practice to collaterally challenge federal convictions in federal court by raising arguments of dubious merit. This practice is overburdening federal district courts to the point of having a vast number of these criminal cases re-litigated on § 2255 grounds. We look at this matter with respect to the rights of litigants, but also must protect the integrity of the system against meritless allegations. *See Davis v. U.S.*, 417 U.S. 333, 346 (1974) (in a motion to vacate judgment under §2255, the claimed error of law must be a fundamental defect which inherently results in a complete miscarriage of justice); *see also Dirring v. U.S.*, 370 F.2d 862 (1st Cir. 1967) (§ 2255 is a remedy available when some basic fundamental right is denied—not as vehicle for routine review for defendant who is dissatisfied with his sentence), especially when the conviction was affirmed by the Court of Appeals. This case is a prime example.

# I.

## **Background**

On September 21, 2009, a jury found Hernández-de-la-Rosa guilty of conspiracy both (1) to import and (2) to possess with the intent to distribute four-hundred and forty-eight (448) kilograms of cocaine. (Crim. No. 08-37, Docket Nos. 310, 354.) On December 21, 2009, we sentenced him to three-hundred sixty (360) months imprisonment on each of the two counts, to be served concurrently with each other. (Crim. No. 08-37, Docket No. 354.)

Hernández-de-la-Rosa timely appealed his conviction and sentence, both of which were affirmed by the First Circuit on November 14, 2012. *United States v. Espinal-Almeida*, 699 F.3d 588 (1st Cir. 2012) (Crim. No. 08-37, Docket No. 470). On February 19, 2014, Hernández-de-la-Rosa filed the instant motion to vacate, set aside, or correct his sentence. (Docket No. 1.) On May 6, 2014, the United States filed a response. (Docket No. 7.) Hernández-de-la-Rosa replied on July 22, 2014. (Docket No. 13.) We previously ruled that Hernández-de-la-Rosa's petition is timely and that we have jurisdiction. (Docket No. 12.)

On October 3, 2014, we held an Evidentiary Hearing. (Docket No. 20.)

# II.

## **Analysis**

Because Hernández-de-la-Rosa appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, his pro-se status does not excuse him from complying with procedural and substantive law. *See Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008).

Hernández-de-la-Rosa alleges that his counsel was ineffective for numerous reasons. (Docket No. 1-1.) To prove that his counsel was ineffective, Hernández-de-la-Rosa must show that both: (1) the attorney's conduct "fell below an objective standard of reasonableness;" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984). Failure to satisfy either of the *Strickland* prongs is fatal and, therefore, we can address either prong first. *United States v. Carrigan*, 724 F.3d 39, 44 (1st Cir. 2013). The *Strickland* standard also applies in the context of plea bargaining. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). In the Evidentiary Hearing, Hernández-de-la-Rosa testified that he had several meetings with Rafael Anglada ("Anglada") and several meetings with Ismael Rodríguez-Izquierdo ("Rodríguez-Izquierdo"). (*See* Docket No. 20.) Rodríguez-Izquierdo testified that he has been a practicing lawyer since 1987, and has been practicing criminal law since 2005. (*See* Docket No. 20.) Both attorneys speak Spanish. (*See* Docket No. 20.) In the Evidentiary Hearing, Hernández-de-la-Rosa stated that he did not wish to pursue a claim of ineffective assistance of counsel against Anglada. (*See* Docket No. 20.) He stated that he never wished to pursue a claim against Anglada, but that a fellow prisoner drafted his pleadings and had added that claim. (*See* Docket No. 20.) As explained below, we do not find that his counsel was ineffective.

**A.     Right to Testify**

Hernández-de-la-Rosa alleges in his petition that neither his second attorney, Rodríguez-Izquierdo, nor the court, advised him of his right to testify. (Docket No. 1-1 at 18-19.) However, "a trial judge is not required to apprise a defendant of his right to testify or inquire whether he has waived it." *Owens v. U.S.*, 483 F.3d 48, 58 (1st Cir.

2007).  Further, in the Evidentiary Hearing, Hernández-de-la-Rosa stated that Anglada told him that he could testify at trial regarding ownership of the drugs.  (*See* Docket No. 20.)  Rodríguez-Izquierdo said in the hearing that he informed Hernández-de-la-Rosa of his constitutional right to testify.  He stated that he warned Hernández-de-la-Rosa that his prior criminal history would make it difficult for him to testify, because that would be raised in cross-examination.  Rodríguez-Izquierdo testified that in the co-defendant meeting, the co-defendants appointed one defendant to sit on the witness stand because he was the most eloquent, but that at some point that co-defendant declined and no defendants testified.  (*See* Docket No. 20.)

Hernández-de-la-Rosa has had many interactions with the federal court before. One case for smuggling undocumented immigrants was dismissed.  (*See* Docket No. 20.) In 1993, he pleaded guilty to smuggling undocumented immigrants.  He now stated that in that guilty plea, no one told him that he could testify.  (*See* Docket No. 20.)  In 1995, he again pleaded guilty in federal court, this time to illegally entering the United States. He now claims that when entering that guilty plea, we did not inform him of his right to testify.  (*See* Docket No. 20.)  In 1998, Hernández-de-la-Rosa was again convicted of smuggling undocumented immigrants.  He pleaded guilty, but again claims that the court did not inform him of his right to testify.  (*See* Docket No. 20.)  As he said in this Evidentiary Hearing, in all of his prior cases, he pleaded guilty because he had committed the crime and because he had been the captain of the vessel.  (*See* Docket No. 20.) Hernández-de-la-Rosa now claims that in all his former indictments, pleas, and prison stays, no judge, lawyer, or fellow inmate ever mentioned that a defendant could testify in his own defense.  (*See* Docket No. 20.)  We find that completely unbelievable.

Further, to succeed on his claim against Rodríguez-Izquierdo, Hernández-de-la-Rosa must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688-94. The likelihood of a different result must be "substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011). Throughout trial, counsel argued that "the defendants were wrongfully arrested fishermen out on an innocent fishing trip." *U.S. v. Espinal-Almeida*, 699 F.3d 588, 598 (1st Cir. 2012). As evidence, he presented a "Fishing Permit" and the "Custody Receipt for Seized Property and Evidence." (Crim. No. 08-37, Docket No. 312.) Hernández-de-la-Rosa alleges that he may have testified "regarding his fishing expedition, including but not limited to his possession of a Fishing Permit, GPS Unit, Bait, Fishing Gear, and their Presence in the vicinity of a known popular fishing area." (Docket No. 1-1 at 21.) Thus, his testimony, at most, would have corroborated his physical evidence. At trial, undercover agent Avilés identified Hernández-de-la-Rosa as "the captain of the vessel" that handed off the drugs. *U.S. v. Espinal-Almeida*, 699 F.3d 588, 596 (2012). Prosecutors also presented testimony from the aircraft crew, GPS data, and video footage. *U.S. v. Espinal-Almeida*, 699 F.3d 588, 598-99 (2012). There is not a reasonable probability that Hernández-de-la-Rosa's testimony would have changed the result of the trial.

Hernández-de-la-Rosa stated that he would have testified that he was innocent. (*See* Docket No. 20.) However, he admitted to the court that although he was fishing when he was arrested, he was also smuggling drugs. (*See* Docket No. 20.) Therefore, he admitted that he would have perjured himself if he had testified on his own behalf.

Hernández-de-la-Rosa has not made a showing of prejudice, and this allegation is denied.

**B.     Plea Negotiations**

Hernández-de-la-Rosa says that, when he was initially offered a ten-year plea agreement through his first attorney, Anglada, counsel "did not thoroughly explain the statutes he was charged with, the elements of those offenses, and what quantum of proof was necessary for the government to obtain a conviction on those charges." (Docket No. 1-1 at 23.) Hernández-de-la-Rosa also alleges that "counsel did not adequately explain how the Guidelines would apply had he proceeded to trial versus if he accepted the plea agreement." (Docket No. 1-1 at 23.) However, in the Evidentiary Hearing, Hernández-de-la-Rosa stated that he had no claim against Anglada, so we dismiss this claim. (*See* Docket No. 20.) In the Evidentiary Hearing, Hernández-de-la-Rosa stated that he did not accept the original ten-year plea deal because a co-defendant's lawyer said that ten years was too many. (*See* Docket No. 20.)

Once Hernández-de-la-Rosa had a second attorney, Rodríguez-Izquierdo, he alleges that he was offered a second plea agreement for a fifteen-year sentence. Hernández-de-la-Rosa alleges that Rodríguez-Izquierdo did not explain the elements of a conspiracy charge; § 841(b)'s tiered sentencing structure; that drug quantity was an element of the offense that must be proven beyond a reasonable doubt; or that the drug quantity also triggered mandatory minimum thresholds of the statute. Hernández-de-la-Rosa also alleges that his counsel "failed to effectively explain the sentencing guidelines and how those Guidelines would apply if he proceeded to trial versus if he accepted the plea agreement." (Docket No. 1-1 at 23-24.) In the Evidentiary Hearing, Hernández-de-la-Rosa said that Rodríguez-Izquierdo told him that the maximum sentence he could get after a trial was only fifteen years, and that he did not explain the statutory maximums and minimums. (*See* Docket No. 20.)

Hernández-de-la-Rosa alleges that he wanted the government to re-offer the former ten-year plea deal, but that Rodríguez-Izquierdo told him that the government "wouldn't go for that" and did not conduct further negotiations. Hernández-de-la-Rosa also alleges that his counsel did not tell him that he could enter an "open plea," which we will discuss in the next section of the opinion. (Docket No. 1-1 at 24.) Hernández-de-la-Rosa alleges that he was willing to enter into a plea agreement "containing terms similar to that which was originally offered [ten years]," and claims he was prejudiced because he instead went to trial and was sentenced to two concurrent thirty-year prison sentences. (Docket No. 1-1 at 25.)

Rodríguez-Izquierdo testified that, aside from individual meetings with Hernández-de-la-Rosa, there was also a co-defendant meeting and a meeting in the courtroom. He testified that in the co-defendant meeting, the lawyers discussed the evidence, base offense levels, enhancements, statutory maximums, and other issues with all the defendants. (*See* Docket No. 20.) He testifies that he explained all the possible scenarios to his client from trial to sentencing, and that he showed Hernández-de-la-Rosa the table with sentencing guideline outcomes. (*See* Docket No. 20.) Rodríguez-Izquierdo says that he made numerous efforts to convince the government to re-offer the ten-year plea agreement, but that the government said their final offer would be fourteen years. (*See* Docket No. 20; Criminal No. 08-37-1, Docket No. 289.) Rodríguez-Izquierdo testified that he attempted to persuade Hernández-de-la-Rosa to plead guilty "based on the overwhelming evidence," including more than four-hundred kilograms of drugs seized, testimony from a police agent involved in the venture, evidence from an airplane that followed the mother ship, and GPS evidence. (*See* Docket No. 20.) He testified that all the attorneys held a meeting in the courtroom where the prosecutors

proffered the evidence, because the lawyers wanted the defendants to understand the seriousness of the case. He testified that in that meeting, the court told the defendants that they could be facing a life sentence if convicted. (*See* Docket No. 20.) Rodríguez-Izquierdo testified that he "definitely" explained the maximum term of imprisonment that Hernández-de-la-Rosa was facing. He also testified that he explained how the prior criminal history would affect his sentence. (*See* Docket No. 20.)

To prove prejudice in relation to a plea offer that was not accepted, Hernández-de-la-Rosa must establish that there is a reasonable probability that, but for counsel's deficient advice, he would have pleaded guilty and would not have insisted on going to trial." *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). Hernández-de-la-Rosa does not establish this. (Docket No. 1-1 at 23.) He said in the Evidentiary Hearing that he did not plea "because they had not caught us with the drugs." (*See* Docket No. 20.) He states that he did not accept the fifteen-year plea deal because he wanted the original ten-year agreement which had since expired. (Docket No. 1-1 at 25.) This is not a claim that he was prejudiced by counsel's advice, but rather an argument that he wanted a plea offer which he had previously rejected. There is no constitutional right to plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Therefore, Hernández-de-la-Rosa's attorney could not have demanded an expired offer. Nonetheless, Hernández-de-la-Rosa writes later in his petition that "the government continued to extend plea offers to [him] to the very eve of trial." (Docket No. 1-1 at 25.) It appears that he simply did not like the terms of those agreements and chose trial instead. This ineffectiveness claim fails.

**C.    Open Plea**

Hernández-de-la-Rosa argues that "counsel never even entertained the option of having Hernandez make an open plea and contest the attributable drug quantities at

sentencing in order to argue for a downward adjustment based on acceptance of responsibility." (Docket No. 1-1 at 27.) Rodríguez-Izquierdo testified that he explained straight pleas both before trial and mid-trial. (*See* Docket No. 20.) Hernández-de-la-Rosa argues that "but for counsel's deficient advice, Hernandez would have pleaded guilty and received a lower sentence by application of a 3-point reduction for Acceptance of Responsibility under the Guidelines." (Docket No. 1-1 at 29.) However, in the Evidentiary Hearing, Hernández-de-la-Rosa said that, knowing what he now knows and given the option, he still would not have entered into an open plea. (*See* Docket No. 20.) Therefore, this claim fails.

**D.     Multiple Conspiracy Jury Instruction**

Hernández-de-la-Rosa claims that "the evidence demonstrated two separate conspiracies rather than one overarching conspiracy." (Docket No. 1-1 at 30.) He also claims that counsel's failure to seek a jury instruction on multiple conspiracies constituted ineffective assistance of counsel. (Docket No. 1-1 at 30.)

Hernández-de-la-Rosa claims that one conspiracy was the "Puerto Rican side of the conspiracy," and that it only consisted of the two men who planned, financed, and executed the scheme to import cocaine from the Dominican Republic to Puerto Rico. (Docket No. 1-1 at 30-31.) Hernández-de-la-Rosa was convicted of conspiracy to possess with intent to distribute, and conspiracy to import cocaine, having been identified as the captain of the vessel that transported it from the Dominican Republic to Puerto Rico. *Espinal-Almeida*, 699 F.3d at 594-96. The two Puerto Rican defendants pled guilty -- one on the morning the trial began, and another on the second day of trial. Hernández-de-la-Rosa claims that the government continued to present evidence "related

Case 3:14-cv-01132-JAF   Document 21   Filed 10/17/14   Page 10 of 14

Civil No. 14-1132 (JAF)                                                                                             -10-

solely to these defendants" and that counsel did not object, seek a severance, move for a limiting instruction, or otherwise attempt to limit prejudice. (Docket No. 1-1 at 31.)

Hernández-de-la-Rosa misunderstands conspiracy law. The Supreme Court explains that

> [a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense....The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other…. If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

*Salinas v. United States*, 522 U.S. 52, 63-64 (1997) (internal citations omitted).

Therefore, Hernández-de-la-Rosa is liable for any acts committed by the Puerto Rican co-conspirators in furtherance of the drug importation. This allegation is dismissed.

**E.     Severing the Puerto Rican Defendants**

Hernández-de-la-Rosa claims that his attorney provided ineffective assistance of counsel because he did not file a motion to sever Hernández-de-la-Rosa from the Puerto Rican defendants. (Docket No. 1-1 at 35.) However, the First Circuit endorses a "strong presumption that jointly indicted defendants should be tried together." *United States v. Vega Molina*, 407 F.3d 511, 532 (1st Cir. 2005).

Hernández-de-la-Rosa also alleges that he was prejudiced because (1) there were multiple conspiracies rather than a single conspiracy, and (2) there was "prejudicial spillover evidence" from the Puerto Rican co-defendants. (Docket No. 1-1 at 35.) Hernández-de-la-Rosa alleges that,

> the Court's cautionary instruction [limiting the applicability of the evidence to each defendant] was wholly insufficient, and in any event did not militate against the overwhelming quantity of spillover evidence, unrelated to Hernandez that was allowed to go to the jury room.

(Docket No. 1-1 at 37.)

Hernández-de-la-Rosa has not shown how he was prejudiced. We instructed the jury:

> THE COURT: Members of the Jury, I should tell you something that I forgot this morning. You heard the name of Joaquin Lassalle-Velazquez on the tapes. He was charged in this case, but I already disposed of that case. The case is not before you, so you don't have to decide Mr. Lassalle's case.
>
> Also, yesterday afternoon, after you left, I disposed of the case of Mr. Carrero-Hernandez, El Buho. He's not here anymore.
>
> So we're now continuing the case as to the other four defendants. And you should not speculate as to the reason. I made some decisions that disposed of that case. Okay? Thank you.

(Crim. No. 08-37, Docket No. 423 at 10.) In the jury instructions, we explained:

> THE COURT: Facts taking place in January, 2008, as you have heard, and charging six individuals, the four that are here, and two that you already know that I already disposed of those cases, and that you should not think or figure out why it is that I did that. I have disposed of those cases. Those are closed already.

(Crim. No. 08-37, Docket No. 426 at 98.)

As discussed *supra*, the evidence from the Puerto-Rican co-conspirators was admissible because it was part of the same conspiracy to import cocaine into Puerto Rico from the Dominican Republic. This allegation is dismissed.

**F.     Evidence Related Solely to the Puerto Rican Co-Defendants**

Hernández-de-la-Rosa claims that his counsel was ineffective for failing to move to strike evidence related solely to the Puerto Rican co-defendants or for moving to otherwise request limiting instructions. He argues that during the first two days of trial, the government introduced evidence related to the Puerto Rican defendants who later plead, saying that:

> the district court's minimalist limiting instruction stating 'the presumption of innocence requires the consideration of each defendant separately, and of each count separately,' was patently insufficient for the jury to individually compartmentalize the evidence as it related to separate defendants.

(Docket No. 1-1 at 40.)

We have already established *supra* that there was an over-arching conspiracy and that this evidence was, therefore, related to his case. Further, Hernández-de-la-Rosa fails to explain why the evidence he referenced is unrelated to the conspiracy with which he was charged. It is well-established that "issues that are adverted to in a perfunctory manner absent developed argumentation are waived." *United States v. Brown*, 669 F.3d 10, 16 n.5 (1st Cir. 2012). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (internal citations omitted). This claim fails.

**G.     Sentencing Claim**

Hernández-de-la-Rosa argues that his counsel was ineffective for failing to preserve a sentencing claim that his sentence violated the Sixth Amendment because it was based on a drug quantity determined by the court by a preponderance of the

evidence. (Docket No. 1-1 at 41.) However, the First Circuit held that "a sentencing court may lawfully determine drug quantity by a preponderance of the evidence and use the quantity so determined in constructing a defendant's sentence." *United States v. Platte*, 577 F.3d 387, 392 (1st Cir. 2009). Therefore, this claim fails.

### H. Cumulative Errors

Hernández-de-la-Rosa argues that he was prejudiced by cumulative errors of counsel. We repeat the First Circuit's logic from his previous appeal: "Because we did not find merit in any of his individual complaints, it of course follows that there was no reverse-worthy cumulative error." *Espinal-Almeida*, 699 F.3d at 621.

## III.
## Certificate of Appealability

In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever issuing a denial of § 2255 relief we must concurrently determine whether to issue a certificate of appealability ("COA"). We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). While Hernández-de-la-Rosa has not yet requested a COA, we see no way in which a reasonable jurist could find our assessment of his constitutional claims debatable or wrong. Hernández-de-la-Rosa may request a COA directly from the First Circuit, pursuant to Rule of Appellate Procedure 22.

Case 3:14-cv-01132-JAF   Document 21   Filed 10/17/14   Page 14 of 14

Civil No. 14-1132 (JAF)                                                                                      -14-

## IV.

## Conclusion

For the foregoing reasons, we hereby **DENY** Hernández-de-la-Rosa's § 2255 motion (Docket No. 1).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 17th day of October, 2014.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE